You may proceed counsel. Sorry, Judge Owens. I did not want to interrupt. No, no, I appreciate that. Appreciate that. Good morning. My name is Jim Jellison and I represent Lewis Hugh Plunkett III. May it please the court. It seems to me that in the last at least five to six years, if not beyond, the Supreme Court of the United States has sent us a message about qualified immunity. And that message is that we can't rely on this idea that you don't necessarily need a case on point too much. The court, through cases like Emmons and Casella, has really said to the Ninth Circuit in particular that when we look at clearly established law, the second prong of qualified immunity, we really need to find a case that not only holds that a Fourth Amendment violation occurred, but it's got to be under a set of facts that is particular enough so that every reasonable officer can read that and say, for example, in this case, hey, I can't use a taser under these circumstances. It is constitutionally prohibited. And clearly established law from the U.S. Supreme Court, from the Ninth Circuit Court of Appeals, or a robust consensus of circuit courts, tells me that I can't do it. JUSTICE SOTOMAYOR. Would this be a different case if it were absolutely clear from the record that the officer here did not warn the individual before administering the taser? JUDGE LEBEN. Would it be a different case if he, if there was no warning whatsoever, and in other words, even no taser, taser, taser? JUSTICE SOTOMAYOR. Yeah. The answer is no, and the reason is Smith v. Agdeppa, which is at 81 F. 4th, 994, which tells us that when we're dealing with a fast-moving situation, even though a warning is preferred, it's not required. JUSTICE SOTOMAYOR. How about if it was clear that the officer knew Ramsey was autistic? JUDGE LEBEN. No. Again, I think it's also a question of degrees of what they knew, and there's no understanding on the part of Officer Plunkett. You know, autism, and this may go beyond the briefing, is a spectrum disorder. You can have very high-functioning autistic people. You can have very low-functioning autistic people that operate in a 5- or 6-year-old level. That does not appear the case here. JUSTICE SOTOMAYOR. Just so I understand sort of the factual setting here, this is traffic court? JUDGE LEBEN. This is traffic court. This is the Lake Havasu City Municipal Court. JUSTICE SOTOMAYOR. Believe me, I know where Lake Havasu is. I promise you. It's traffic court, and the citation is for not having proof of insurance? JUDGE LEBEN. Correct. JUSTICE SOTOMAYOR. And Mr. Ramsey was attempting to show to the judge that he had proof of insurance? Is that right? JUDGE LEBEN. Yes. JUSTICE SOTOMAYOR. And the judge wouldn't allow that? JUDGE LEBEN. It does not appear that he would. JUSTICE SOTOMAYOR. Okay. JUDGE LEBEN. And I don't think that those issues have anything to do with what Officer Plunkett eventually did because of the situation that he found himself in. What was clear is that Ramsey was involved in a series of aggressive behaviors, even starting with the judge. So at some point he stands up, you know, and he becomes aggressive with the judge verbally. At some point it appears that he's starting to film the judge, and the judge sees this and tells him to relinquish his camera. He refuses to do that. Officer Daley stands up when Ramsey stands up, and he's challenged by Ramsey, who says words to the effect of, you know, what are you going to do about it, little man? The judge ultimately is told by Ramsey, smile, because you're on camera. And the judge orders him out of the courtroom. I think this is where the officer's actions come into play. They attempt to escort him out. He pulls his arm away from them. He's let out of the courtroom. And when we talk about this escort hold, the plaintiff's expert even says that that's appropriate. But practically speaking, why wouldn't the officers use at least some light form of, you know, physical control to get him out of the courtroom after seeing this aggression? There's no case law that I've seen to suggest that that violates clearly established law. Was he tasered inside or outside the courtroom? I'm sorry, sir. Was he tasered inside or outside of the courtroom? Outside of the courtroom in the hallway. Okay. And that followed a series. Let me just ask a little more clarification on the factual circumstance here. The judge told him to leave the courtroom, right? Yes. Actually, I think to be more precise, Judge Tashima, the court said remove him from the courtroom. And the officers in the galley took that as direction from them or to them to assist in removing him from the courtroom. Okay. So the question is, all right, so it reasonably, we'll take it, it reasonably appeared to the officers that the judge said take him out. So what did they do then? Did they immediately approach Ramsey, the two officers? Yes, they did. And it was, I think, really near kind of the threshold of where the little gate is that we come into the court and attempted to just control his bicep. And Ramsey responded, you see this all on the video. That happened inside the courtroom? Yes, sir. As they started to walk out? Yes, sir. All right. But the real scuffle didn't happen until they were outside the courtroom? Yes, sir. That is correct. Thank you. Go ahead. And that's really the key part here. You know, when we look at ARS 13-2508, it has basically three forms of resisting arrest. And the first form, and by the way, the statute doesn't use the term active resistance. It uses the term physical resistance. So when you look at A-1, an A-1 violation is using or threatening to use physical force against the peace officer or another. A-3 is where we get the term passive resistance. And that's why the passive resistance cases don't really apply here. Because Ramsey, on the video, used or threatened to use physical force against the peace officer. And not only do we see that on the video, but in the answering brief from plaintiffs, they acknowledge that. And in the courtroom that he pulled his arm away, but outside the courtroom that he pulled his arm away. That he pulled his arm out of Sondral's control. That's a physical action to resist arrest. That he knocks a piece of equipment off a plunket, that's a physical form of resisting arrest. But their acknowledgements even go further than that. Ramsey verbally resists. Plunket announces to everybody in the hallway, he's in custody. Ramsey verbally says, no, I'm not. After that, he clenches his fist. Another physical action, a threat of physical force against the peace officers. And the plaintiff even admits this, that as the many officers are trying to control him, which we see clearly on the video, they admit that what he's doing is jerking from side to side in order to free himself from the control of the officers. That is a use of physical force against the peace officers to prevent a resistance. And then they acknowledge in the answering brief that he tried to twist his body again to free himself from the officers' detention or arrest efforts. A taser is deployed. Judge Hawkins, you're correct, taser, taser, taser. But you can see in the video how quickly things are moving here. But you know what? It works. The taser application works. The resistance stops. The officers are able to handcuff Mr. Ramsey. And other than handcuffing him, there's no further force that's employed in this case. And I think one of the advantages of observing clearly established law properly by the courts is that when we honor clearly established law and its standard properly, we don't sort of inadvertently take away from police officers an option to use less than lethal force in order to control a volatile situation. Now, we've seen taser cases where the taser is deployed and serious injuries occurred, and that can change the calculus of the court's decision. But that's not what we have in this case. The taser ended Ramsey's resistance. He was handcuffed, and you can see him in the hospital. There's no serious injuries. He's even jovial with the nurses. This is not one of those cases where somebody falls off the fence or they're tasered and they go from a standing position face down into the sidewalk. The plaintiff has the responsibility to show clearly established law that meets standards like we see in the Emmons v. City of Escondido case from the U.S. Supreme Court. In cases like Mattos v. Brooks, Bryan v. McPherson, the original Gravelet v. Blondine case, they don't do it. And the reason they don't do it is when you look at the facts of each of those cases, you're dealing with people that are compliant. They're not physically resisting. They may not be wanting to sign a citation, the Brooks situation. They may not want to get out of the car. They're just sitting there, the Brooks situation. But they're not doing what Ramsey's doing. And what Ramsey's doing is he's fighting back. And he's using physical force to fight back. And because of the admissions and the answering brief coupled with what we see on the video, these passive resistance cases simply don't provide clearly established law. And even the new cases I read last night from 28 Jade from Plaintiff's Counsel don't do it. In fact, the higher case, the Ninth Circuit case, there actually was a taser deployment in that case. That suspect displayed a knife, used it to that opinion, not part of the excessive force equation, doesn't apply to the case. And even though it's not our burden to show it, we've provided cases like Lindsay, for example, that say aggression coupled with physical resistance is the kind of active resistance that allows a taser to be deployed. The Turner case demanded clearly established law before qualified immunity could be denied and a taser deployment, again, where there was physical struggling. And I even cited to some of the state cases, Lee v. Henry, or excuse me, Lee v. State and the Henry case to show that struggles like this are deemed 132508A1 use or threats of physical force, not passive physical force. Because no clearly established law has been provided by the plaintiffs in this case, Officer Plunkett is entitled to the application of qualified immunity and the district court's decision to the contrary should be I have two minutes and 20 seconds, would like to reserve that. You got it. Good morning, Your Honors. Isaac Hernandez on behalf of the plaintiff appellee. May it please the court. This case, as Your Honors well know, is about whether the force was reasonable based on clearly established law. This is a summary judgment standard where the facts must be construed in favor to the plaintiff. The defendant here, Officer Plunkett, argues that the video proves that Ramsey was actively resisting. They allege and take the position that Ramsey was not resisting the video other than Ramsey pulling it away and asking the officers not to touch him. There was never a threat of violence. Defendants also allege that there was no serious injury in this case. They argue that the law prohibiting the conduct at issue in this case was not sufficiently clear. And they cite cases where the tasering was deemed not to rise to the are all distinguishable. They involve instances where there were serious crimes that had been committed. They involve situations where the person resisting the arrest was a large individual to say the least, 230 pounds, 280 pounds, barreling or charging towards officers or other people in the near vicinity. What precipitated, I guess it's a municipal court involved here? Yes, Your Honor, that's my understanding. Yeah. What precipitated that judge's direction that your client be removed? Well, I think as counsel for Plunkett Can we tell that from the record? If we can't tell it from the record, tell me. I think as counsel for defendant alluded to, Your Honor, there was frustration by Mr. Ramsey in not being able to present papers showing that he had insurance at the time. That frustrated him. Leading up to that incident, Mr. Ramsey was trying to communicate both to the judge and other people in the room, apparently, that he had autism, that he had a disability, that he needed an accommodation. And within a matter of minutes, that resulted in, I think, the judge's frustration that Mr. Ramsey was not complying in a way that he felt was appropriate within that space. Was he trying to video what was going on himself? I think there's, in the video, it shows him reaching for his phone and he does make the comments, you know, smile, you're on camera. Whether he was referring to what was on his phone or if he suspected that there was a camera on in the courtroom, he did make those statements. So there were both, there was frustration both on behalf of the judge, I think, and Mr. Ramsey's inability to understand what was happening in that moment. And Mr. Ramsey was frustrated because he thought he was there for a relatively simple proceeding to present these insurance documents to the court, which the court did not accept. And at that point of frustration, the judge orders that he be removed from the room. Mr. Ramsey turns to exit the room, and that's where the officers very within seconds are holding his arms and he pulls away. Go ahead. Okay. Thank you, Your Honor. So our version of the facts matter, not the defendant's version of the facts. The video itself does not provide all of the relevant facts in this case. To the extent that the video is relevant, our position, Your Honors, is that at most it shows that he was noncompliant, not that he was threatening or intending to intimidate those around him. And he was injured. The skin was punctured. He was taken to the immediately after, and there was a serious injury. While the district court's decision in this case provides a great summary of everything that transpired during the course of these events, there's a couple of facts that we believe warrant a little more emphasis. Number one, the officers had been in the room. All of the officers that were involved in wrestling Ramsey to the ground in this incident were in the room. They had time to deliberate and consider their actions. They had acknowledged that he was engaging in somewhat abnormal behavior. They acknowledged hearing about his disability, his difficulty communicating, and his request for accommodation. After the judge refuses to accept his proof of insurance upsetting Ramsey, he's ordered to leave. At that point, where he is ordered to leave, he turns towards the exit. He's grabbed. He continues towards the exit, still at that moment. And after he's sworn by roughly six officers in the hallway, one of them employing a dangerous chokehold, Plunkett yells, Taser, Taser, Taser, and deploys the gun. This all happens, as Judge Reyes points out, within a matter of 15 seconds. There was no warning to Ramsey that a taser was going to be deployed. There was no warning to Ramsey that he should behave or stop resisting and that a taser would be deployed. So what principles and what precedent was established as of August of 2018 that are relevant to this analysis regarding passive resistance or noncompliant conduct and tasering or other similar use of nontrivial force? In our answering brief, we cite five tasering cases, all of which occurred, all of which involve incidents that occurred prior to August of 2019. In our supplemental authority, we cite a Sixth Circuit case, the Jackson v. Beasley case, involves a tasering incident where there was at least a posturing by the individual who was tased at that point where he clenched his fist and took a kind of a fighting stance. That was not enough. That was still excessive force. We cite two projectile cases involving pepper spray, again, incidents prior to August of 2019, one in our answering brief, another in our supplemental authority from last night. We cite other cases, importantly regarding mental illness and what officers should take into account when they have knowledge that somebody they are trying to apprehend or arrest is suspected of having some mental illness. In the Higher v. City and County of Honolulu case. Let me stop you right there. Yes. Is it your position that the officers in this case had, as you say, some knowledge of the plaintiff's mental illness? Absolutely, Your Honor. And how did they get it? It was pronounced multiple times during the traffic hearing process, where Mr. They were in the courtroom when that was done? All of the officers, Officer Plunkett in particular, Officer Daley, Officer Sondral, were all in the room during the traffic court proceeding, where Mr. Ramsey himself said, I am disabled. I need an accommodation. Where Mr. Ramsey's mother, who was also in the room at the time, said, he has autism. He needs help. He lacks the ability to communicate. He needs an accommodation. And you can also just tell from the video that he's getting agitated. And sometimes people who have that issue, they can get agitated in situations where maybe someone else wouldn't. I mean, you can rely on that, I assume, his posture in this in the kind of stamping of the leg during the video. Besides saying he needs accommodation, did either Ramsey or his mother explain what accommodation he needed? There was a request for an accommodation and there was a statement from Ramsey that he needed help or lacked the ability to communicate or to understand communication being directed at him, that he was disabled, that he had autism. All of those statements were made during the course of the traffic proceeding and the officers. But that doesn't go to my question. Did he either say what accommodation he needed? He requested accommodation. What accommodation? I think the only specific request, Your Honor, was that he needed, he wanted to postpone the process so that he can have an attorney present. So he didn't specifically in saying, either him or his mother saying he needed reasonable accommodation, didn't specify the accommodation he needed. But there were statements, again, where Ramsey or his mother say he lacks the ability to communicate or understand what is being communicated to him, that he had autism and that he was disabled. Those statements were clear. The officers acknowledged hearing those statements during their depositions and even in their own reports. They acknowledged seeing awkward behavior from Mr. Ramsey that was extraordinary in the officer's own words. So all of this supports their acknowledgement, their knowledge, their prior knowledge that they were not dealing with a violent individual, somebody who had any sort of weapon near him. They were dealing with an individual with mental illness. And in the higher case, the Ninth Circuit was clear. Our precedent establishes that if officers believe a suspect is mentally ill, they should make greater effort to take control of the situation through less intrusive means. The officers didn't do that here. And in fact, they say that the suspicious behavior they observed had no bearing on how they proceeded from the time that they touched his arm to the time of the tasering. They completely ignore and disregard that knowledge. In Scott v. Smith, another very recent Ninth Circuit case, the court notes that the officers had time to deliberate and consider the conduct before acting. Here, there were, you know, 10, 15 minutes where the officers were in the room where they had this knowledge and it never sunk in. It had no effect or bearing on how they proceeded to handle Mr. Ramsey in that situation. The court says the officers ignored less intrusive means in dealing with a mentally ill person and could have used or implemented de-escalation strategies. We cite other cases where the persons being apprehended or arrested engage in some sort of deflective or reflexive behavior that the courts deemed were defensive, not threatening, not violent behavior. Those are the Scott v. Agorano case and the Sean v. Smith case, which we cite in a brief at page 17. An unintentional touching of a police officer's hand or sleeve did not justify the use of the pepper spray. Here, defense counsel alludes to the knocking off of some device that was on Officer Plunkett's body. This occurred during that scuffle, the wrestling. It was not an intentional attempt to grab anything on Officer Plunkett's body. The clenching of the fist, again, that happens after he's already been apprehended and in a chokehold. That's a natural reaction. It's not intended. It was never intended as a threat to the officers who were attempting to apprehend him. We cite cases, which defense also cites, regarding the fair warning. There was no fair warning within that 15-second time frame. The pronouncement of taser, taser, taser in the heat of the moment within this 15-second time frame without giving Ramsey an opportunity to hear or listen that he may be tased if he does not stop resisting was not provided in this instance. The officers acted, overreacted and reacted too quickly from the moment that Mr. Ramsey was attempting to withdraw to the moment that he was tased. With respect to this clearly established law issue, again, the Court's recent decision in Scott v. Smith's addresses defense counsel's concern regarding this spectrum of how specific the conduct needs to be. And in the Scott v. Smith decision, the Court, again, very clearly sets out the precedent for the Ninth Circuit. A decision with identical facts is not required to clearly establish that it is unreasonable to use deadly force when the force is totally unnecessary to protect officers, the public or to protect himself. While the officer should be on notice, the Court should not define too narrowly otherwise that essentially allows every other defendant officer to be excused from conduct that should be assessed by a jury. Lastly, in terms of, again, the officer's knowledge regarding clearly established law, we have an expert opinion in this case who reviewed the police department's and practices, referring to policies that had been in place since 2012 regarding training materials that had been issued and requested by the department for its officers to review earlier in 2019. That, again, shows that these were accepted parameters, accepted rules of conduct that the officers should have applied with respect to mentally ill individuals and de-escalation techniques that were completely ignored by Officer Plunkett in this case. That expert report begins at ER 87. Again, I'll note for the Court that the cases cited by the defendants regarding tasering are distinguishable. They do not have the same characteristics as the passive resistance that Mr. Ramsey was engaged in here. Mr. Ramsey was not a violent individual. He was not being arrested because of any violent crime. He had no prior violent criminal history that caused the officers to be concerned for their safety or anybody else in the area. I'll leave it at that. Thank you, Your Honors. Thank you, Counsel. So, I would like to stress that this case isn't about officers sitting in a courtroom for 10 or 15 minutes and assessing a fast-moving, now physical or violent, encounter. This is really about one minute from the time the judge says, remove him, to the time that they're in the hallway and the tasering occurred. So, this is the fast-moving situation. You can see that on the video. In addition to the video, I will stress on the answering brief, pages 8 and 9, there are a series of admissions that this was not simply passive resistance, that there was jerking, clenching of the fist. Common sense does not go out the window. If I'm in an altercation with somebody and they clench their right fist, I am going to expect a punch. That's a threat of they twist and they jerk and they try to get away and they use their body to do that. They are physically resisting. That applies even though the officers knew this was an autistic individual? Yes. Having autism or any other disability is not a license to engage in criminal resistance of detention or arrest. Something to do with how you should interpret his physical actions, doesn't it? It could, but once the physical activity occurs, the officers need to respond to that. Again, just because they know he's autistic doesn't mean that he's not subject to being taken into custody and being controlled. I want to, on that record, because you asked questions about that, Judge Tashima, there was a request for accommodation that was provided to the court in writing before the hearing. The officers didn't know anything about that. The officers heard Mr. Ramsey say he was autistic at the hearing because he wanted a lawyer, but there was no explanation beyond that. When he started resisting, even his mother said, stop resisting. Mattos, Brooks, even Smith, they don't supply clearly established law because there is no clearly established law that prohibits Plunkett from doing what he did. He is entitled to qualified immunity. And if there's no further questions, that completes my presentation. Thank you, counsel. Thank you both for your fine briefing and argument in this case. This matter is submitted, and we are done for the day.
judges: HAWKINS, TASHIMA, OWENS